Next case up this morning is Stegall v. Saul. Mr. Keller? Good morning. Good morning, Your Honors. Christopher Keller here for Ms. Stegall. Trials turn on witness credibility, and the credibility clash between Ms. Stegall and Ms. Williams defined this trial. That is why the two evidentiary rulings we challenge here today are so critical. These rulings against Stegall didn't merely tip the scales in the defendant's favor. They put Stegall at a profound disadvantage in trying to convince the jury of her position. First, over Stegall's objection, the district court's in limine ruling admitted testimony from physician assistant Timothy Newcomb along with a 2015 physical examination. Now this testimony simply had no relevance here. It concerned an examination five years after the fact. And this testimony influenced the jury in terms of how it viewed Stegall's credibility. Now admittedly, the jury did find that Stegall was disabled. How do you get around that? If you're arguing that the ruling in the admission of the evidence that she gave a contradictory statement about her disability five years after the fact is irrelevant and prejudicial, yet the jury found in her favor on that particular element, how could this be prejudicial to your client? Certainly, Judge Saini, it makes our position harder. But I would point out, and as your honors know, these types of findings, they're not found in a vacuum. And while the court, excuse me, the jury did find that she was disabled, this evidence frankly painted Ms. Stegall as someone who was uncertain, inconsistent, untrustworthy. But the jury likely rejected that argument because they found in her favor on that particular element. I don't know how you could say it's an abuse of discretion or, more importantly, that there was any kind of prejudice from it, if the jury, regardless of that evidence, found for your client on that particular element. Certainly, Your Honor. And that's obviously a difficult aspect of our position. And, again, I recognize that. Going to Your Honor's question about the abuse of discretion here, with respect to Judge Dow, his reliance on the Halverson case, which we explained involves Social Security disability benefits, it simply has nothing to do with this case, no relevance. Mr. Keller, I believe your client testified that her disability was permanent. And when she took the stand and testified, she testified she was still disabled, correct? Yes, Your Honor. And that trial was 2016? Yes. So why wouldn't evidence that she had said a statement of her own, that she made about a year before that, saying she wasn't disabled and didn't have any pain, go directly to her testimony that she was permanently disabled and a year later still disabled? Certainly. There are some fluctuations or some conflicts. Why wouldn't that directly go to her credibility and be relevant? Well, Ms. Stiegel did testify that the reason that she told Mr. Newcomb, I should say Physician's Assistant Newcomb, that her condition was not permanent was frankly because she was concerned that she would lose an opportunity for this job. So exactly, why wasn't that an issue of fact for the jury to hear that testimony and make a determination if that's the reason she told him that or if she's not disabled? Certainly, Your Honor. Certainly. Again, there are weaknesses to our position. I recognize that, and I recognize the fact that this is obviously a jury verdict that we're ultimately appealing. Again, these rulings obviously are considered for abuse of discretion, and I recognize that as not exactly a hospitable standard of review. But again, these rulings, especially concerning the Halverson case, and then if I can segue into the second ruling, which we're challenging, the candidate that was ultimately selected, Ms. Cha, we challenged that ruling as well. And for obvious reasons, the defendant didn't want the jury to think that it had animus towards people with disabilities. Thus, the evidence of Ms. Cha's disabled status effectively would inoculate it against the bar of discrimination. Now, over our objection, the court permitted that evidence. And we would argue that this was an abuse of discretion for a couple reasons. Ms. Cha's disabled status, we don't know what her disability was. And additionally, we don't know, actually we do know that she did not seek an accommodation. Didn't the government have to prove in order, or didn't your client have to prove in order to win that the defendant had a discriminatory intent? Yes, Your Honor. So why wouldn't it be relevant on the bigger question of discriminatory intent that they hired somebody who wasn't disabled? Well, we would point to the O'Connor case, the Supreme Court's decision on O'Connor v. Consolidated Coin. And in that case, the court said that the fact that someone in a protected class lost out to an opportunity to someone else in the protected class is irrelevant. And that decision, we feel, controls this issue. And notably, the response brief says nothing about this case. O'Connor is not even cited. So additionally, in addition to not following O'Connor, which we did cite to the district court in our motion to eliminate, this evidence simply, again, was not relevant. And it prejudiced Ms. Diegel because, again, Ms. Cha did not make an accommodation request. And Ms. Diegel testified that it was the accommodation request that she viewed in her eyes as the catalyst for the abrupt change in demeanor from Ms. Williams during the interview. So that's an important distinction between Ms. Cha and Ms. Diegel. The change in attitude or whatever you're calling it, was it a surprise because she brought up the – did she call it a disability? I don't know if she said the word disability, but she did say – She had a back problem of some sort. Yes. I guess it had some sort of limiting factor. And so she brings that up, and the interviewer at that point is surprised because that didn't show up anywhere, I guess. I believe that's – In her application. She purposely didn't put that in there. I'm not sure if she left that out deliberately or not, but I do know that the interview was going very well until Ms. Diegel brought up this subject, and more specifically brought up the fact that she would need an accommodation. And that's where – Like what? I'm sorry? What would she need? A cushion or something? She would need basically to be able to stand at various times, to walk around. I don't think the specifics of the accommodation they really delved into too much during the interview,  just the mere fact that she brought up the accommodation that would be needed, her condition, that's what prompted this change in demeanor. We have very little time left. Thank you, Judge. All right. Judge Mann, I can answer. I was just going to say, well, that's – This is sort of an irony because when we get the disability cases where somebody's trying to get a benefit, and she left that out, and then when she then mentioned she has this disability, which was not in her application, you use this – or she uses this idea where suddenly the woman changes – the interviewer changes her attitude. Well – Surprise or disappointment or why didn't she tell me that in the first place or something? I don't know. Sure. I understand. But, again, I think it's a little different here because, obviously, it's a discrimination case and it's a failure to hire someone. So I would make that distinction. The same agency, you know. Yes. That's the irony we get. Right. That's true. All right. Thank you, Your Honor. Thank you. Ms. German? May it please the Court, Counsel. I'd like to start with the notion that the district court did not abuse its discretion in admitting evidence that the person ultimately hired for this job, Ms. Cha, herself had a severe disability. That evidence was plainly relevant to consideration of discriminatory intent. Appellant attempts to set up a straw man argument by pointing to cases like O'Connor and its progeny, which provide a simple rule that in establishing a prima facie case, a plaintiff need not demonstrate that they were passed over in favor for someone outside their protected class. Now, this court applied that case in Carson and wrote as follows. That one's replacement is of another race, sex, or age may help raise an inference of discrimination. So the reverse must be true, Your Honors. That one's replacement is a member of the same protected class may rebut an inference of discrimination. That's just common sense. Now, in this case, Ms. Stiegel accused the hiring manager, Beth Williams, of having a discriminatory intent and passing Ms. Stiegel over for the job just on the basis of her disability. And when Ms. Williams took the stand, she addressed that allegation head on, and her testimony was very compelling. She spoke about her motivations to serve disabled citizens and her role at the Social Security Administration. She talked about the many valuable members of her own team that had disabilities and the work she had done to devise reasonable accommodations for them. She spoke about her son, who had a disability, and how the notion of access was intrinsically valuable to her as a person. And finally, she said that for this vacancy, I hired someone known to have a severe disability. And all of those pieces of circumstantial evidence were relevant to the question of the existence of discriminatory intent in this case. Now, appellant only challenged the last one, Ms. Cha's hiring. But I think it's important to view that in the context of all of Ms. Williams' testimony and her efforts to rebut the allegation of discriminatory intent. Second, it would have been impossible for the Social Security Administration to explain how this recruitment action concluded without talking about Ms. Cha's disability. The vacancy was filled through a special hiring authority, which we've referred to as Schedule A. Now, that's exempted. That means it exists outside of the USA jobs process, where there's a certificate of eligibles. Here, someone can be referred through Schedule A, and it sort of fast-tracks the hiring process. Now, Ms. Stegall placed much emphasis during the trial and still in the appeal on her placement on this certificate of eligibles. Now, how would the SSA have been able to explain that at trial if they couldn't have talked about the Schedule A hiring authority? And Schedule A only applies to folks with disabilities. It's meant to benefit young adults with disabilities who have an interest in federal service. It's meant to diversify our federal workforce. Would that benefit Stegall if she had been forthright about her problem? Yes, she could have applied to this very vacancy through the Schedule A hiring authority, but she didn't. She applied through USA Jobs, and she appeared on a certificate of eligibles. But ultimately, it doesn't matter because they were both interviewed for the job, and they were both considered. The reason why Schedule A was important and was important to discuss at the trial was to rebut all this emphasis placed on Ms. Stegall's position on the certificate of eligibles, because there was no obligation to hire someone off of the certificate of eligibles in light of this exempted hiring authority, Schedule A. And there would have been no way to discuss that without revealing to the jury that the person ultimately hired herself had a severe disability, and that's the only reason why she was eligible for Schedule A. Unless there are further questions, we'd ask that you affirm the decision of the district court. Thank you. Mr. Keller, anything further? The simple question that this case and this appeal presents is whether Ms. Stegall was disabled at the time of the hearing, and whether she was discriminated against for that basis. The two eliminated rulings that we've challenged clouded that simple issue. The peripheral points of Ms. Cha and Mr. Newcomb consumed, or I should say subsumed, the central question of this case. Again, the time of the employment decision, that is the relevant period, not five years after. Thank you. If there are no further questions, thank you, Your Honor. Take the case under advisement.